**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **457 REALTY CORP.,** | **COMPLAINT** |
| **Plaintiff,** | **Case No.:** |
| – against – | **Jury Trial Demanded** |
| **CHAMOIS PROPERTIES, INC. and ROBERT F. DENNY,** | |
| **Defendants.** | |

Plaintiff, **457 REALTY CORP.** (hereinafter "Plaintiff"), by and through its attorneys,

**ZABELL & ASSOCIATES, P.C.**, complains and alleges as follows:

## I.   PRELIMINARY STATEMENT

1. Plaintiff brings this civil action seeking monetary damages and punitive damages based upon Defendants' breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and fraud. Plaintiff further seeks equitable relief in the form of an accounting.

## II.   JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000.

3. This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1332 because Plaintiff resides within this judicial district.

## III.   PARTIES

4. **PLAINTIFF** is a domestic business corporation and conducting business at 7 South Jersey Avenue, Setauket, New York 11733.

5. Upon information and belief, Defendant **CHAMOIS PROPERTIES, INC.** (*hereinafter* "Defendant Chamois" or "Corporate Defendant"), is a foreign business corporation, organized and existing under the laws of the State of Virginia and conducting business at 105 Sir Thomas Lunsford Drive, Williamsburg, Virginia 23185.

6. Upon information and belief, the named Defendant, **ROBERT F. DENNY** (*hereinafter* "Defendant Denny"), was at all times relevant herein, a domiciliary of the State of Virginia.

7. Upon information and belief, Defendant Denny is the principal and/or registered agent of Defendant Chamois.

## IV. FACTS

8. Plaintiff repeats and re-alleges each and every allegation set forth herein.

9. On or around May 1, 1993, Plaintiff and Marco Properties, Inc. (*hereinafter* "MP") formed a general business partnership known as "JB Associates" (*hereinafter* "JB"), organized and existing under the laws of the State of New York.

10. Upon information and belief, Defendant Denny was the principal and/or registered agent of MP.

11. The purpose of the formation of JB, in part, was for the purchase and management of the real estate located at or around 457-461 Pantigo Road, East Hampton, New York 11937 (*hereinafter* the "Pantigo Property").

12. Plaintiff and MP agreed to appoint Defendant Denny as business manager of JB for purposes of managing and operating the Pantigo Property.

13. Defendant Denny was responsible for managing the finances of JB associated with the Pantigo Property.

14. Plaintiff owned a one-half interest in the Pantigo Property.

15. MP owned a one-half interest in the Pantigo Property.

16. Among other terms, Plaintiff and MP agreed to share equally in the profits and all other surplus after all liabilities of JB were satisfied.

17. In or around 2012, MP changed its entity name to "Chamois Properties, Inc."

18. On or about May 22, 2017, Defendant Chamois registered its business in the State of Virginia.

19. Upon registration, Defendant Chamois identified Defendant Denny as its registered agent.

20. On or about May 1, 2003, JB entered into an agreement with Cook, Hall & Hyde, Inc. ("Tenant Cook") for the lease of a portion of the Pantigo Property (*hereinafter* the "Cook Lease").

21. The Cook Lease stated, in relevant part:

 - That the Tenant shall take good care of the premises and shall, at the Tenant's **own** cost and expense make all repairs of a **non-structural** nature;

 - Landlord need only repair the damaged **structural** parts of the Premises. Landlord is not required to repair or replace any equipment, fixtures, furnishings or decorations unless originally installed by Landlord;

 - Landlord may replace, at the expense of Tenant, any and all broken glass in and about the demised premises;

 - The Tenant will pay as additional rent, as billed by the Landlord, the following, all based upon the tenant's percentage occupancy of the entire building which is as follows:

     • Tenant's proportionate share of outside sprinkler system maintenance and repair;

     • Tenant's proportionate share of inside sprinkler system maintenance and repair;

     • Tenant's proportionate share of parking lot maintenance and repair;

- Landlord shall be responsible for all exterior ground maintenance including snow removal, the mowing of grass and plantings in general. However, Tenant shall pay its proportionate share of the cost thereof. The Tenant shall be responsible for all **non-structural interior maintenance and repair**; and

- Tenant agrees to accept possession of the demised premises "as is" and "as built."

(emphasis added) A true and accurate copy is attached hereto as <u>Exhibit 1</u>.

22. On or about January 1, 2005, JB entered into an agreement with Bougros, LLC ("Tenant Bougros") for the lease of a separate portion of the Pantigo Property (*hereinafter* the "Bougros Lease").

23. The Bougros Lease stated, in relevant part:

- That the Tenant shall take good care of the premises and shall, at the Tenant's **own** cost and expense make all repairs of a **non-structural** nature;

- Landlord need only repair the damaged **structural** parts of the Premises. Landlord is not required to repair or replace any equipment, fixtures, furnishings or decorations unless originally installed by Landlord;

- Landlord may replace, at the expense of Tenant, any and all broken glass in and about the demised premises;

- The Tenant will pay as additional rent, as billed by the Landlord, the following, all based upon the tenant's percentage occupancy of the entire building which is as follows:

  • Tenant's proportionate share of outside sprinkler system maintenance and repair;

  • Tenant's proportionate share of inside sprinkler system maintenance and repair;

4

- Tenant's proportionate share of parking lot maintenance and repair;

- Landlord shall be responsible for all exterior ground maintenance including snow removal, the mowing of grass and plantings in general. However, Tenant shall pay its proportionate share of the cost thereof. The Tenant shall be responsible for all **non-structural interior maintenance and repair**; and

- Tenant agrees to accept possession of the demised premises "as is" and "as built."

(emphasis added) A true and accurate copy is attached hereto as Exhibit 2.

24. Following the execution of the Cook Lease and the Bougros Lease, Defendant Chamois, *via* its agent Defendant Denny, authorized the maintenance and repair of several "non-structural" parts of the Pantigo Property.

25. Specifically, Defendant Chamois authorized "non-structural" maintenance and repairs on the property which included, but was not limited to:

- HVAC repair and maintenance;

- Parking lot repair and maintenance;

- Interior renovation, repair, and maintenance;

- Painting of exterior walls;

- Replacement and/or repair of tenants' windows;

- Landscaping; and

- Plumbing repair.

26. Upon completion of these non-structural maintenance and repair projects, JB assumed virtually all associated costs, despite clear and unambiguous language in both the Cook Lease and the Bougros Lease, stating that the Tenant Cook and Tenant Bougros are responsible for all costs and expenses associated with the maintenance and repair of "non-structural" parts of the Pantigo Property.

27. In addition, upon information and belief, Defendant Denny, in his capacity as business manager for JB and principal and/or agent of Defendant Chamois, failed to seek full reimbursement from Tenant Cook and Tenant Bougros of all "non-structural" maintenance and repairs, pursuant to the clear and unambiguous language of the governing leases.

28. In or around December 2009, Defendant Denny advised Plaintiff by way of letter, and *via* its principal, Fran Cirillo ("Ms. Cirillo"), that he hired his son-in-law, Brian G. Dean ("Mr. Dean"), as the new contractor to maintain and make repairs to the Pantigo Property, on an as needed basis.

29. However, upon information and belief, Defendant Chamois failed to fully disclose to, and withheld information from, Plaintiff regarding maintenance and repair projects performed on the Pantigo Property by Mr. Dean.

30. Upon information and belief, Defendant Chamois, *via* Defendant Denny, made unauthorized payments to Mr. Dean for maintenance and repair services performed on the Pantigo Property without Plaintiff's consent.

31. Specifically, Defendant Chamois, *via* Defendant Denny, made unauthorized payments to Mr. Dean for maintenance and repairs on the Pantigo Property which included, but were not limited to:

- Replacement and repair of tenants' windows;

- Interior renovation, repair, and maintenance; and

- Painting of exterior walls.

32. Upon information and belief, Defendant Chamois, *via* Defendant Denny, made unauthorized payments, without the consent of Plaintiff, to Mr. Dean to reimburse him for expenses unrelated to work performed on the Pantigo Property.

33. Specifically, Defendant Chamois authorized reimbursement payments to Mr. Dean for hardware store purchases unrelated to any maintenance or repair work for the Pantigo Property.

34. Furthermore, Defendant Denny, in his capacity as business manager of JB, failed to seek full reimbursement from Tenant Cook and Tenant Bougros for all authorized "non-structural" maintenance and repair performed by Mr. Dean, due and owing pursuant to the clear and unambiguous language of the Cook Lease and the Bougros Lease.

35. Defendant Chamois, *via* Defendant Denny, misrepresented that the costs and expenses incurred by JB for maintenance and repair projects performed on the Pantigo Property during the applicable time period were legitimate, properly calculated, and fully reimbursed pursuant to the Cook Lease and Bougros Lease.

36. These inaccurate costs and expenses, all of which assumed by JB, undercut the total profit distributed to Defendant Chamois and Plaintiff, pursuant to their partnership agreement. Further, such costs and expenses required Plaintiff to assume out-of-pocket expenses.

37. Upon information and belief, Defendant Chamois, *via* its principal and/or agent Defendant Denny, obtained a second mortgage on the Pantigo Property.

38. Defendant Chamois had an affirmative duty to disclose material information to Plaintiff about the second mortgage obtained on the Pantigo Property.

39. Defendant Chamois failed to disclose any information or documentation to Plaintiff regarding said mortgage.

40. Upon information and belief, Defendant Chamois concealed information regarding the mortgage for the purposes of obtaining tax benefits solely for the benefit of itself.

41. Upon submission, Plaintiff's damages are based upon the intentional acts of Defendant Chamois and Defendant Denny, amounting to a breach of its fiduciary duty to Plaintiff, aiding and abetting a breach of fiduciary duty, and fraud. Such a breach resulted in damages, in the form of lost profits, out-of-pocket expenses, and lost tax benefits, all in an amount to be determined at trial but known to exceed $75,000.00.

### V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Breach of Fiduciary Duty – Against Defendant Chamois)

42. Plaintiff repeats and re-alleges each and every allegation set forth herein.

43. Defendant Chamois, as a designated partner of JB, owed Plaintiff a fiduciary duty of care, loyalty and honesty.

44. Implied in such fiduciary duties is Defendant Chamois' obligation to protect the interests of all partners in all JB business affairs.

45. Defendant Chamois breached its fiduciary duty to Plaintiff by:

- failing to seek full reimbursement from Tenant Cook and Tenant Bougros for all costs and expenses associated with the "non-structural" maintenance and repair work performed on the Pantigo Property, consistent with the clear and unambiguous language of the Cook Lease and Bougros Lease;

- withholding material information from Plaintiff regarding maintenance and repair projects performed on the Pantigo Property by Mr. Dean, which resulted in unauthorized payments to Mr. Dean made without the consent of Plaintiff;

- making unauthorized payments, without the consent of Plaintiff, to Mr. Dean to reimburse him for expenses unrelated to the Pantigo Property;

- failing to seek full reimbursement from Tenant Cook and Tenant Bougros of all authorized "non-structural" maintenance and repair performed by Mr. Dean, pursuant to the clear and unambiguous language of the Cook Lease and the Bougros Lease;

- failing to disclose any information or documentation to Plaintiff regarding mortgage on the Pantigo Property; and

- earning tax benefits stemming from the mortgage on the Pantigo Property without the knowledge or consent of Plaintiff.

46. As a result of Defendant Chamois' breach, Plaintiff suffered damages in the form of lost profits, unnecessary out-of-pocket expenses, and lost tax benefits.

47. Such damages were directly and proximately caused by the misconduct of Defendant Chamois, all of which amounting to a breach of fiduciary duty.

48. By reason of its breach, as alleged, Defendant Chamois is liable to Plaintiff in an amount to be determined at trial, plus interest, but an amount not less than $75,000.00.

49. In addition, as result of Defendant Chamois' breach, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
(Aiding and Abetting a Breach of Fiduciary Duty – Against Defendant Denny)

50. Plaintiff repeats and re-alleges each and every allegation contained herein.

51. Defendant Chamois, as a designated partner of JB, owed Plaintiff a fiduciary duty of care and honesty.

52. Implied in such fiduciary duties is Defendant Chamois' obligation to protect the interests of all partners in connection with the business matters of JB.

53. Defendant Chamois breached its fiduciary duty to Plaintiff by:

   - failing to seek full reimbursement from Tenant Cook and Tenant Bougros for all costs and expenses associated with the "non-structural" maintenance and repair work performed on the Pantigo Property, pursuant to the clear and unambiguous language of the Cook Lease and Bougros Lease;

   - failing to fully disclose information to Plaintiff regarding maintenance and repair projects performed on the Pantigo Property by Mr. Dean, which resulted in unauthorized payments to Mr. Dean made without the consent of Plaintiff;

   - making unauthorized payments, without the consent of Plaintiff, to Mr. Dean to reimburse him for expenses unrelated to the Pantigo Property;

   - failing to seek full reimbursement from Tenant Cook and Tenant Bougros of all authorized "non-structural" maintenance and repair performed by Mr. Dean, pursuant to the clear and unambiguous language of the Cook Lease and the Bougros

Lease;

- failing to disclose any information or documentation to Plaintiff regarding mortgage on the Pantigo Property; and

- earning tax benefits stemming from the mortgage on the Pantigo Property without the knowledge or consent of Plaintiff.

54. As a result of Defendant Chamois' breach, Plaintiff suffered damages in the form of lost profits, unnecessary out-of-pocket expenses, and lost tax benefits.

55. Such damages were directly and proximately caused by the misconduct of Defendant Chamois, all of which amounting to a breach of fiduciary duty.

56. Defendant Denny knowingly participated in Defendant Chamois' breach of fiduciary duty by having actual knowledge of and substantially assisting with such a breach.

57. Specifically, Defendant Denny, in his capacity as the business manager of JB and principal and/or agent of Defendant Chamois, managed and facilitated payments by and between JB, Plaintiff, Defendant Chamois, Tenant Cook, Tenant Bougros, Mr. Dean, and other vendors and contractors doing business with JB in connection with maintenance and repair projects for the Pantigo Property.

58. Further, Defendant Denny, as business manager for JB, maintained all financial information regarding the Pantigo Property.

59. By reason of his participation, as alleged, Defendant Denny is liable to Plaintiff in an amount to be determined at trial, plus interest.

### THIRD CLAIM FOR RELIEF
<u>(Claim for an Accounting – Against Defendant Chamois)</u>

60. Plaintiff repeats and re-alleges each and every allegation contained herein.

61. By virtue of the fact that Plaintiff's compensation (i.e. profit distribution) is based on JB's net profit, and by virtue of the fact that Defendant Chamois, *via* its principal and/or agent Defendant Denny, alone maintained all the financial information to ascertain profits, Defendant Chamois placed itself in a fiduciary position to Plaintiff, and as a result owed Plaintiff a duty of loyalty and fidelity.

62. At all times herein relevant, Defendant Chamois, *via* its principal and/or agent Defendant Denny, controlled the information necessary to ascertain profits to be distributed to Defendant Chamois and Plaintiff.

63. Upon information and belief, Defendants provided Plaintiff with inaccurate and false information, concerning the costs and expenses of JB, in determining Plaintiff's share of net profits pursuant to Defendant Chamois and Plaintiff's partnership agreement.

64. Further, by virtue of the fact that Defendant Chamois, *via* its principal and/or agent Defendant Denny, obtained a second mortgage on the Pantigo Property, and by virtue of the fact that Defendant Chamois alone maintained all the financial information regarding such a mortgage, Defendant Chamois placed itself in a fiduciary position to Plaintiff, and as a result owed Plaintiff a duty of loyalty and fidelity.

65. At all times herein relevant, Defendant Chamois, *via* its principal and/or agent Defendant Denny, controlled the information necessary to ascertain tax benefits to which Plaintiff was entitled.

66. Upon information and belief, Defendants concealed material information concerning the second mortgage on the Pantigo Property.

67. Defendants are in possession of and have wrongfully withheld this financial information from Plaintiff.

68. Defendants are in possession of and have wrongfully withheld profits and tax benefits due to Plaintiff.

69. Defendants are in sole possession of the records and financial information necessary to determine the amounts due to Plaintiff.

70. Plaintiff is entitled to an accounting from Defendants of all expenses relating to maintenance and repair paid by JB, all profits realized, and all financial information relating to the second mortgage on Pantigo Property.

**FOURTH CLAIM FOR RELIEF**
(Fraud – Against Defendant Chamois)
(Plead in the Alternative)

71. Plaintiff hereby repeats each and every allegation contained herein.

72. Defendant Chamois, *via* Defendant Denny, represented that the costs and expenses assumed by JB for maintenance and repair projects performed on the Pantigo Property during the applicable time period were legitimate, properly calculated, and fully reimbursed pursuant to the Cook Lease and Bougros Lease.

73. These representations were false because such costs and expenses were inaccurate due to Defendant Chamois' failure, *via* its principal and/or agent Defendant Denny, to abide by the terms and conditions regarding costs and expenses of repairs and maintenance, contained in the Cook Lease and Bourgos Lease.

74. Further, as outlined above, Defendant Chamois intentionally concealed the second mortgage on the Pantigo Property for the sole purpose of obtaining the tax benefits of such mortgage without the knowledge and consent of Plaintiff.

75. Defendant Chamois had a duty to disclose information to Plaintiff regarding the second mortgage but failed to do so.

76. Plaintiff reliance on Defendant Chamois' representations was justifiable.

77. As a result of Defendant Chamois' misrepresentations and concealment of material information, Plaintiff has suffered damages in the form of lost profits and lost tax benefits, in an amount to be determined at trial, plus interest.

## DEMAND FOR JURY TRIAL

78. Plaintiff repeats and re-alleges the allegations set forth herein.

79. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** as a result of the unlawful conduct and actions of Defendants herein alleged, Plaintiff respectfully requests this Court grant the following relief:

a. On the First, Second and Fourth Claim for Relief, an award of Plaintiff's actual damages in an amount to be determined at trial, plus interest;

b. On the Third Claim for Relief, an Order compelling an accounting of all costs and expenses of maintenance and repairs performed on the Pantigo Property, and any and all financial information relating to the second mortgage on the Pantigo Property;

c. The issuance of an Order restraining and enjoining Defendants from the sale, transfer and/or assignment of any corporate or personal assets during the pendency of this action;

d. An award of punitive damages where available by statute;

e. An award of pre and post judgment interest where available by statute; and

     f.   Such other and further relief as the Court may deem just and proper.

Dated: Bohemia, New York
        September 4, 2018

                                      **ZABELL & ASSOCIATES, P.C.**
                                        *Attorneys for Plaintiff*

             By:                                    
                                      Saul D. Zabell, Esq.
                                      1 Corporate Drive, Suite 103
                                      Bohemia, New York 11716
                                      Tel.: (631) 589-7242
                                      Fax: (631) 563-7475
                                      szabell@laborlawsny.com