# EXHIBIT 1

A 185 Blumberg's Improved Form for ... 12-19

JULIUS BLUMBERG, INC.,
PUBLISHER, NYC 10013

# This Agreement BETWEEN

JB Associates, a partnership, having an address of Post Office
Box 5059, East Hampton, NY  11937

*as Landlord*

*and*

Cook, Hall & Hyde Inc., a corporation, having an address of
461 Pantigo Road, East Hampton, NY  11937

*as Tenant*

**Witnesseth:** *The Landlord hereby leases to the Tenant the following premises:*

1935 square feet in the most easterly store (463)
12,000 square feet in the second most easterly store (461)
1520 square feet in the second most westerly store (459)

of the premises known as 457-63 Pantigo Road, East Hampton, New York

*for the term of*  Ten (10) Years

*to commence from the*  1st  *day of* May  2003 XX  *and to end on the*

30th *day of* April  2013 XX  *to be used and occupied only for*

Approved office and retail occupancy

*upon the conditions and covenants following:*

**1st.** *That the Tenant shall pay the annual rent of*

See Rider Attached

*said rent to be paid in equal monthly payments in advance on the* 1st *day of each and every month during the term aforesaid, as follows:*

**2nd.** *That the Tenant shall take good care of the premises and shall, at the Tenant's own cost and expense make all repairs*

of a non-structural nature

*and at the end or other expiration of the term, shall deliver up the demised premises in good order or condition, damages by the elements excepted.*

**3rd.** *That the Tenant shall promptly execute and comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and Local Governments and of any and all their Departments and Bureaus applicable to said premises, for the correction, prevention, and abatement of nuisances or other grievances, in, upon, or connected with said premises during said term; and shall also promptly comply with and execute all rules, orders and regulations of the New York Board of Fire Underwriters, or any other similar body, at the Tenant's own cost and expense.*

**4th.** *That the Tenant, successors, heirs, executors or administrators shall not assign this agreement, or underlet or underlease the premises, or any part thereof, or make any alterations on the premises, without the Landlord's consent in writing;* or occupy, or permit or suffer the same to be occupied for any business or purpose deemed disreputable or extra-hazardous on account of fire, under the penalty of damages and forfeiture, and in the event of a breach thereof, the term herein shall immediately cease and determine at the option of the Landlord as if it were the expiration of the original term.* ** *

**5th.** *Tenant must give Landlord prompt notice of fire, accident, damage or dangerous or defective condition. If the Premises can not be used because of fire or other casualty, Tenant is not required to pay rent for the time the Premises are unusable. If part of the Premises can not be used, Tenant must pay rent for the usable part. Landlord shall have the right to decide which part of the Premises is usable. Landlord need only repair the damaged structural parts of the Premises. Landlord is not required to repair or replace any equipment, fixtures, furnishings or decorations unless originally installed by Landlord. Landlord is not responsible for delays due to settling insurance claims, obtaining estimates, labor and supply problems or any other cause not fully under Landlord's control.*

*If the fire or other casualty is caused by an act or neglect of Tenant, Tenant's employees or invitees, or at the time of the fire or casualty Tenant is in default in any term of this Lease, then all repairs will be made at Tenant's expense and Tenant must pay the full rent with no adjustment. The cost of the repairs will be added rent.*

*Landlord has the right to demolish or rebuild the Building if there is substantial damage by fire or other casualty. Landlord may cancel this Lease within 30 days after the substantial fire or casualty by giving Tenant notice of Landlord's intention to demolish or rebuild. The Lease will end 30 days after Landlord's cancellation notice to Tenant. Tenant must deliver the Premises to Landlord on or before the cancellation date in the notice and pay all rent due to the date of the fire or casualty. If the Lease is cancelled Landlord is not required to repair the Premises or Building. The cancellation does not release Tenant of liability in connection with the fire or casualty. This Section is intended to replace the terms of New York Real Property Law Section 227.*

* Which consent shall not be unreasonably withheld, but there shall be no grocery or food of any kind permitted and provided that the assignee and/or

**6th.** The said Tenant agrees t. the said Landlord and the Landlord's agents ! other representatives shall have the right to enter into and upon said premises, or any part thereof, at all reasonable hours for the purpose of examining the same, or making such repairs or alterations therein as may be necessary for the safety and preservation thereof.

**7th.** The Tenant also agrees to permit the Landlord or the Landlord's agents to show the premises to persons wishing to hire or purchase the same; and the Tenant further agrees that on and after the sixth month, next preceding the expiration of the term hereby granted, the Landlord or the Landlord's agents shall have the right to place notices on the front of said premises, or any part thereof, offering the premises "To Let" or "For Sale", and the Tenant hereby agrees to permit the same to remain thereon without hindrance or molestation.

**8th.** That if the said premises, or any part thereof shall be deserted or become vacant during said term, or if any default be made in the payment of the said rent or any part thereof, or if any default be made in the performance of any of the covenants herein contained, the Landlord or representatives may re-enter the said premises by force, summary proceedings or otherwise, and remove all persons therefrom, without being liable to prosecution therefor, and the Tenant hereby expressly waives the service of any notice in writing of intention to re-enter, and the Tenant shall pay at the same time as the rent becomes payable under the terms hereof a sum equivalent to the rent reserved herein, and the Landlord may rent the premises on behalf of the Tenant, reserving the right to rent the premises for a longer period of time than fixed in the original lease without releasing the original Tenant from any liability, applying any moneys collected, first to the expense of resuming or obtaining possession, second to restoring the premises to a rentable condition, and then to the payment of the rent and all other charges due and to grow due to the Landlord, any surplus to be paid to the Tenant, who shall remain liable for any deficiency.

**9th.** Landlord may replace, at the expense of Tenant, any and all broken glass in and about the demised premises. Landlord may insure, and keep insured, all plate glass in the demised premises for and in the name of Landlord. Bills, for the premiums therefor shall be rendered by Landlord to Tenant at such times as Landlord may elect, and shall be due from, and payable by Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rental. Damage and injury to the said premises, caused by the carelessness, negligence or improper conduct on the part of the said Tenant or the Tenant's agents or employees shall be repaired as speedily as possible by the Tenant at the Tenant's own cost and expense.

**10th.** That the Tenant shall neither encumber nor obstruct the sidewalk in front of, entrance to, or halls and stairs of said premises, nor allow the same to be obstructed or encumbered in any manner.

**11th.** The Tenant shall neither place, or cause or allow to be placed, any sign or signs of any kind whatsoever at, in or about the entrance to said premises or any other part of same, except in or at such place or places as may be indicated by the Landlord and consented to by the Landlord in writing. And in case the Landlord or the Landlord's representatives shall deem it necessary to remove any such sign or signs in order to paint the said premises or the building wherein same is situated or make any other repairs, alterations or improvements in or upon said premises or building or any part thereof, the Landlord shall have the right to do so, providing the same be removed and replaced at the Landlord's expense, whenever the said repairs, alterations or improvements shall be completed.

**12th.** That the Landlord is exempt from any and all liability for any damage or injury to person or property caused by or resulting from steam, electricity, gas, water, rain, ice or snow, or any leak or flow from or into any part of said building or from any damage or injury resulting or arising from any other cause or happening whatsoever unless said damage or injury be caused by or be due to the negligence of the Landlord.

**13th.** That if default be made in any of the covenants herein contained, then it shall be lawful for the said Landlord to re-enter the said premises, and the same to have again, re-possess and enjoy. The said Tenant hereby expressly waives the service of any notice in writing of intention to re-enter.

**14th.** That this instrument shall not be a lien against said premises in respect to any mortgages that are now on or that hereafter may be placed against said premises, and that the recording of such mortgage or mortgages shall have preference and precedence and be superior and prior in lien of this lease, irrespective of the date of recording and the Tenant agrees to execute without cost, any such instrument which may be deemed necessary or desirable to further effect the subordination of this lease to any such mortgage or mortgages, and a refusal to execute such instrument shall entitle the Landlord, or the Landlord's assigns and legal representatives to the option of cancelling this lease without incurring any expense or damage and the term hereby granted is expressly limited accordingly.

**15th.** The Tenant has this day deposited with the Landlord the sum of $ -nil- as security for the full and faithful performance by the Tenant of all the terms, covenants and conditions of this lease upon the Tenant's part to be performed, which said sum shall be returned to the Tenant after the time fixed as the expiration of the term herein, provided the Tenant has fully and faithfully carried out all of said terms, covenants and conditions on Tenant's part to be performed. In the event of a bona fide sale, subject to this lease, the Landlord shall have the right to transfer the security to the vendee for the benefit of the Tenant and the Landlord shall be considered released by the Tenant from all liability for the return of such security; and the Tenant agrees to look to the new Landlord solely for the return of the said security, and it is agreed that this shall apply to every transfer or assignment made of the security to a new Landlord. Two months security will be paid to landlord upon each sublet or assignment.

**16th.** That the security deposited under this lease shall not be mortgaged, assigned or encumbered by the Tenant without the written consent of the Landlord.

**17th.** It is expressly understood and agreed that in case the demised premises shall be deserted or vacated, or if default be made in the payment of the rent or any part thereof as herein specified, or if, without the consent of the Landlord, the Tenant shall sell, assign, or mortgage this lease or if default be made in the performance of any of the covenants and agreements in this lease contained on the part of the Tenant to be kept and performed, or if the Tenant shall fail to comply with any of the statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and Local Governments or of any and all their Departments and Bureaus, applicable to said premises, or if the Tenant shall file or there be filed against Tenant a petition in bankruptcy or arrangement, or Tenant be adjudicated a bankrupt or make an assignment for the benefit of creditors or take advantage of any insolvency act, the Landlord may, if the Landlord so elects, at any time thereafter terminate this lease and the term hereof, on giving to the Tenant five days' notice in writing of the Landlord's intention so to do, and this lease and the term hereof shall expire and come to an end on the date fixed in such notice as if the said date were the date originally fixed in this lease for the expiration hereof. Such notice may be given by mail to the Tenant addressed to the demised premises.

**18th.** Tenant shall pay to Landlord the rent or charge, which may, during the demised term, be assessed or imposed for the water used or consumed in or on the said premises, whether determined by meter or otherwise, as soon as and when the same may be assessed or imposed, and will also pay the expenses for the setting of a water meter in the said premises should the latter be required. Tenant shall pay Tenant's proportionate part of the sewer rent or charge imposed upon the building. All such rents or charges or expenses shall be paid as additional rent and shall be added to the next month's rent thereafter to become due.

**19th.** That the Tenant will not nor will the Tenant permit undertenants or other persons to do anything in said premises, or bring anything into said premises, or permit anything to be brought into said premises or to be kept therein, which will in any way increase the rate of fire insurance on said demised premises, nor use the demised premises or any part thereof, nor suffer or permit their use for any business or purpose which would cause an increase in the rate of fire insurance on said building, and the Tenant agrees to pay on demand any such increase.

**20th.** The failure of the Landlord to insist upon a strict performance of any of the terms, conditions and covenants herein, shall not be deemed a waiver of any rights or remedies that the Landlord may have, and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained. This instrument may not be changed, modified, discharged or terminated orally.

**21st.** If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim against Landlord for the value of any unexpired term of said lease. No part of any award shall belong to the Tenant.

**22nd.** If after default in paym... of rent or violation of any other provision of this lease, or upon the expiration of this lease, the Tenant moves out or is dispossessed and fails to remove any trade fixtures or other property prior to such said default, removal, expiration of lease, or prior to the issuance of the final order or execution of the warrant, then and in that event, the said fixtures and property shall be deemed abandoned by the said Tenant and shall become the property of the Landlord.

**23rd.** In the event that the relation of the Landlord and Tenant may cease or terminate by reason of the re-entry of the Landlord under the terms and covenants contained in this lease or by the ejectment of the Tenant by summary proceedings or otherwise, or after the abandonment of the premises by the Tenant, it is hereby agreed that the Tenant shall remain liable and shall pay in monthly payments the rent which accrues subsequent to the re-entry by the Landlord, and the Tenant expressly agrees to pay as damages for the breach of the covenants herein contained, the difference between the rent reserved and the rent collected and received, if any, by the Landlord during the remainder of the unexpired term, such difference or deficiency between the rent herein reserved and the rent collected if any, shall become due and payable in monthly payments during the remainder of the unexpired term, as the amounts of such difference or deficiency shall from time to time be ascertained; and it is mutually agreed between Landlord and Tenant that the respective parties hereto shall and hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other on any matters whatsoever arising out of or in any way connected with this lease, the Tenant's use or occupancy of said premises, and/or any claim of injury or damage.

**24th.** The Tenant waives all rights to redeem under any law of the State of New York.

**25th.** This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in nowise be affected, impaired or excused because Landlord is unable to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repairs, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Landlord is prevented or delayed from so doing by reason of governmental preemption in connection with a National Emergency or in connection with any rule, order or regulation of any department or subdivision thereof of any governmental agency or by reason of the condition of supply and demand which have been or are affected by war or other emergency.

**26th.** No diminution or abatement of rent, or other compensation, shall be claimed or allowed for inconvenience or discomfort arising from the making of repairs or improvements to the building or to its appliances, nor for any space taken to comply with any law, ordinance or order of a governmental authority. In respect to the various "services," if any, herein expressly or impliedly agreed to be furnished by the Landlord to the Tenant, it is agreed that there shall be no diminution or abatement of the rent, or any other compensation, for interruption or curtailment of such "service" when such interruption or curtailment shall be due to accident, alterations or repairs desirable or necessary to be made or to inability or difficulty in securing supplies or labor for the maintenance of such "service" or to some other cause, not gross negligence on the part of the Landlord. No such interruption or curtailment of any such "service" shall be deemed a constructive eviction. The Landlord shall not be required to furnish, and the Tenant shall not be entitled to receive, any of such "services" during any period wherein the Tenant shall be in default in respect to the payment of rent. Neither shall there be any abatement or diminution of rent because of making of repairs, improvements or decorations to the demised premises after the date above fixed for the commencement of the term, it being understood that rent shall, in any event, commence to run at such date so above fixed.

**27th.** Landlord shall not be liable for failure to give possession of the premises upon commencement date by reason of the fact that premises are not ready for occupancy or because a prior Tenant or any other person is wrongfully holding over or is in wrongful possession, or for any other reason. The rent shall not commence until possession is given or is available, but the term herein shall not be extended.

```
See Rental Rider and Rider paragraphs 28-49 Attached.

Additional to Paragraph 4:  A sale or transfer of 50% or more of the
stock in the tenant (if the tenant is a corporation) or the sale or transfer
f 50% or more of the tenant if it be a partnership shall be construed as
as assignment or sublease herein, except a transfer to an employee of
Cook, Hall & Hyde Inc., shall not be an assignment or sublease.
```

And the said Landlord doth covenant that the said Tenant on paying the said yearly rent, and performing the covenants aforesaid, shall and may peacefully and quietly have, hold and enjoy the said demised premises for the term aforesaid, provided however, that this covenant shall be conditioned upon the retention of title to the premises by the Landlord.

**And it is mutually understood and agreed** that the covenants and agreements contained in the within lease shall be binding upon the parties hereto and upon their respective successors, heirs, executors and administrators.

**In Witness Whereof,** the parties have interchangeably set their hands and seals (or caused these presents to be signed by their proper corporate officers and caused their proper corporate seal to be hereto affixed) this 29th day of April, 2003

Signed, sealed and delivered
in the presence of:

_____ L. S.
JB Associates, Landlord
by Robert F. Denny, Partner
_____ L. S.

_____ L. S.
Cook, Hall & Hyde Inc., Tenant
By: Leonard Scioscia, President

RIDER TO LEASE DATED 29 APRIL, 2003 BETWEEN JB ASSOCIATES, LANDLORD AND COOK, HALL & HYDE INC., TENANT

28th. The Tenant will pay as additional rent, as billed by the Landlord, the following, all based upon the tenant's percentage occupancy of the entire building which is as follows:

| | | |
|---|---|---|
| 459 (most westerly store) | 9.9% | |
| 461 (second most easterly store) | 72.0% | CHH 84.8% |
| 463 (most easterly store) | 12.0% | Bovonovi 15.2% |
| TOTAL | 93.9% | |

    a. Tenant's proportionate share of the real estate taxes imposed by the Town of East Hampton.

    b. Tenant's proportionate share of the water cost as billed by the Suffolk County Water Authority or its successor or assigns.

    c. Tenant's proportionate share of the electricity for the outside lights as billed by the Long Island Power Authority or its successor or assigns.

    d. Tenant's proportionate share of outside sprinkler system maintenance and repair.

    e. Tenant's proportionate share of inside sprinkler system maintenance and repair.

    f. Tenant's proportionate share of parking lot maintenance and repair.

29th. Landlord shall be responsible for all exterior ground maintenance including snow removal, the mowing of grass and plantings in general. However, Tenant shall pay its proportionate share of the cost thereof. The Tenant shall be responsible for all non-structural interior maintenance and repair.

30th. Landlord reserves the right to impose parking regulations with respect to the overall parking scheme of the premises.

31st. Landlord shall carry fire insurance at its own cost and expense on the building structure. The rate being paid by the Landlord is a rate attributable to a normal retail store that does not sell any highly flammable or specialized merchandise of a combustible nature. In the event that the fire insurance rate is increased due to the use of the premises by the Tenant, then the Tenant shall be responsible for any increase in Landlord's insurance cost as additional rent.

32nd. Tenant shall obtain and maintain a liability policy with minimum limits of $1,000,000 for bodily injury and property damage. Such insurance shall be at the Tenant's expense. A memorandum of insurance or a copy of said insurance policy, naming the Landlord as an additional insured, is to be delivered to the Landlord within ten days of the commencement of this lease.

33rd. To the extent that it is lawful to do so, Landlord and Tenant each hereby expressly waive and release any cause of action or right of recovery which each may hereafter have against the other for any loss or damage to the leased premises or to the contents thereof belonging to either, caused by fire, explosion, or any other property risk covered by insurance.

34th. All signs at the premises visible from the exterior of the building or placed anywhere on the premises must be approved in advance by the Landlord. Additionally, Tenant is responsible for then obtaining approval from the appropriate local governmental body and is responsible for payment of any fees necessary to obtain such approval.

35th. Any renovations or internal alterations to be made by the Tenant are subject to the consent and approval of the Landlord prior to said renovations being made, which consent will not be unreasonably withheld.

36th. Upon the expiration or sooner termination of this lease, Tenant shall remove all debris and other property of Tenant located in and around the premises. Tenant shall repair any damage in connection with the removal of its property and restore the to its original condition, ordinary wear and tear excepted. Structural improvements made by the Tenant become the property of the Landlord upon the expiration or sooner termination of this lease. This provision shall survive the termination of the lease.

37th. Tenant shall keep the area around the refuse containers neat, clean and orderly, and all refuse shall be placed in refuse containers. Additionally, no material or refuse will be placed outside in front of the leasehold.

38th. Rent is payable on or before the first day of the month. Rent received after that date is subject to a late fee of 5 per cent (5%) of the monthly rent. Late fees are considered to be additional rent.

39th. Landlord hereby grants to Tenant an option to renew this lease for one additional term of ten (10) years provided that the Tenant is not in default under any of the terms or conditions of this lease and further providing that the Tenant gives to the Landlord six months written notice prior to the expiration of the original term of this lease. Notice must be sent by certified mail, return receipt requested, to the Landlord. Said notice must be given in the ninth (9th) year of the lease only.

40th.  The rent for the additional term will be agreed upon between the Landlord and Tenant, and in the event that it cannot be agreed upon, then the Tenant will choose a real estate broker and the Landlord will choose a real estate broker to come up with a fair market rental value of the premises for the additional ten year term.  If the rent determined by the two brokers is within 10% of each other, then the rent shall be fixed by adding the two values together and dividing by two.

In the event that the rental values determined by the two brokers differs by more than 10%, then and in that event, the two brokers will choose a third broker and that third broker's determination of the rental value shall be binding upon all parties hereto.

41st.  Tenant agrees to report any actual or suspected sprinkler system malfunctions or deficiencies to Landlord immediately, as this can have an effect upon insurance coverage.

42nd.  Tenant shall indemnify, defend and hold Landlord harmless from any and all claims and damages (including reasonable attorneys' fees and costs) arising from Tenant's use of the demised premises, the conduct of its business, or from any activity, work, or thing done, permitted or suffered by the Tenant, in or about the demised premises or the building in which the demises premises are located unless caused by Landlord, Landlord's agents or employees.  This indemnification shall include claims and damages arising from damage to the environment caused by Tenant, Tenant's agents or employees.  This clause shall survive the termination of this lease.

43rd.  Tenant agrees to accept possession of the demised premises "as is" and "as built."

44th.  Tenant covenants and agrees that in the event of renovation, or internal alterations:

    a.  The plans and specifications shall comply with the laws, codes, ordinances, orders, regulations and requirements applicable to the work and also to the requirements, if any, of any insurer which insures the Landlord.

    b.  Tenant shall use materials of good quality and the work shall be done in a good and workmanlike manner.

    c.    None of the work shall be commenced or done unless and until Tenant has furnished to Landlord policies of workers compensation insurance and public liability and property damage insurance or certificates of such insurance protecting Landlord with respect to any and all claims for damages resulting from injury to person or property or from loss of life or property sustained by anyone during the course of the work. Original policies or certificates of such insurance shall be procured and delivered by Tenant to Landlord, together with evidence of payment of the premiums therefore. Said policies (except the workers compensation policies) shall include the Landlord as an additional insured and shall, if requested by Landlord, include the interest of any other Landlord under any underlying lease or the holder of any mortgage covering or including the land and building of which the demised premises are a part. Said policies of insurance with respect to public liability shall have limits of not less than $1,000,000 for property damage and/or bodily injury or death to any number of persons in respect of any one accident or occurrence; and such policies of insurance which may be in the form of "excess risk policies," shall be taken in responsible companies licensed to do business in the State of New York.

45th   In the event that the whole of the building shall be lawfully condemned or taken in any manner for the public or quasi-public use or purpose, this lease and the term and estate hereby granted shall forthwith cease and terminate as of the date of taking of possession for such use or purpose and the rent and other charges shall be apportioned as of such date.

Landlord shall be entitled to receive the entire award in any condemnation proceeding without deduction therefrom for any estate vested in Tenant by this lease and Tenant shall receive no part of such award or awards. Tenant hereby expressly assigns to Landlord any and all of its rights, title and interest in and to such award or awards or any part thereof.

Nothing herein contained shall preclude Tenant from making its own claim for the value of its trade fixtures, furniture and furnishings installed by and at the sole expense of Tenant and included in such taking, and for the value of Tenant's business and/or any moving expenses to which Tenant may be entitled as a result of such condemnation proceeding.

46th.  Nothing in this lease shall be deemed to construe Landlord and Tenant as partners, or business associates, or in any way responsible for each other. Landlord and Tenant are distinct and individual, and are not partners or joint venturers.

47th.  Landlord and Tenant, each and singly, represents and warrants that with respect to this lease it has dealt with no broker.

48th. Tenant is hereby given a right of first refusal to rent any additional space that becomes available in the subject building. Landlord will notify Tenant, by certified mail, return receipt requested, of availability of space. Tenant must respond within 15 days of date of mailing if it wishes to rent this additional space. Terms of rental will be the same terms as within this lease, with the exception of rents, which will be determined in accordance with the procedures of Paragraph 40 of this lease.

49th. Tenant herein assumes all the terms and conditions of the lease.

Agreed to this 29th day of April, 2003

_____
JB Associates, Landlord
By: Robert F. Denny, Partner

_____
Cook, Hall & Hyde Inc., Tenant
By: Leonard Scioscia, President

RENTAL RIDER TO PARAGRAPH 1st. OF LEASE DATED 29 APRIL, 2003
BETWEEN JB ASSOCIATES, LANDLORD AND COOK, HALL & HYDE INC.
TENANT

Base rents for the first through tenth years of this lease will be as follows:

**459-63 Pantigo Road, East Hampton, New York** — Base Rents

| | Sq.Ft. | Annual Base Rent 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 | 11-12 | 12-13 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 463 | 1935 | $41,744.16 | $43,679.16 | $45,614.16 | $47,549.16 | $49,484.16 | $51,419.16 | $53,354.16 | $55,289.16 | $57,224.16 | $59,159.16 |
| 459 | 1520 | $30,807.76 | $32,327.76 | $33,847.76 | $35,367.76 | $36,887.76 | $38,407.76 | $39,927.76 | $41,447.76 | $42,967.76 | $44,487.76 |
| 461 | 12000 | $187,109.76 | $199,109.76 | $211,109.76 | $223,109.76 | $235,109.76 | $247,109.76 | $259,109.76 | $271,109.76 | $283,109.76 | $295,109.76 |
| Total Base | | $259,661.68 | $275,116.68 | $290,571.68 | $306,026.68 | $321,481.68 | $336,936.68 | $352,391.68 | $367,846.68 | $383,301.68 | $398,756.68 |
| [handwritten] 15455 | | 16.80 | 17.80 | 18.80 | 19.80 | 20.80 | 21.80 | 22.80 | 23.80 | 24.80 | 25.80 |

[handwritten margin note: "Base incr bill from old bill  $2/ft"]

Payable in equal months payments as follows: — MAY 1 start —

| | Sq.Ft. | Monthly Base Rent 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 | 11-12 | 12-13 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 463 | 1935 | $3,478.68 | $3,639.93 | $3,801.18 | $3,962.43 | $4,123.68 | $4,284.93 | $4,446.18 | $4,607.43 | $4,768.68 | $4,929.93 |
| 459 | 1520 | $2,567.31 | $2,693.98 | $2,820.65 | $2,947.31 | $3,073.98 | $3,200.65 | $3,327.31 | $3,453.98 | $3,580.65 | $3,707.31 |
| 461 | 12000 | $15,592.48 | $16,592.48 | $17,592.48 | $18,592.48 | $19,592.48 | $20,592.48 | $21,592.48 | $22,592.48 | $23,592.48 | $24,592.48 |
| Total Base | | $21,638.47 | $22,926.39 | $24,214.31 | $25,502.22 | $26,790.14 | $28,078.06 | $29,365.97 | $30,653.89 | $31,941.81 | $33,229.72 |

Along with additional rents as defined in Paragraph 28 below. All rents, including base rents and additional rents will be paid in equal monthly payments in advance on the first day of each and every month.

Agreed to this 29th day of April, 2003

[signature]
JB Associates, Landlord
By: Robert F. Denny, Partner

[signature]
Cook, Hall & Hyde Inc., Tenant
By: Leonard Scioscia, President

[handwritten: Revised 29 April 2003]

*Through 2023*

THIRD AMENDMENT, DATED FEBRUARY 1, 2013 TO RENTAL RIDER TO PARAGRAPH 1ST OF LEASE DATED 29 APRIL, 2003 BETWEEN J B ASSOCIATES, LANDLORD, AND COOK MARAN & ASSOCIATES, INC., TENANT

Base rents for years 2013 – 14 through 2022 – 23 reflect the area being rented to be 13,935 square feet, the initial base rent being $27. Per square foot, and rental rate increments of 4% to be effective 1st day of May each year per the rental schedule below.

All rents, including monthly base rents and additional rents as defined in Paragraph 28 of this lease, or elsewhere, will be paid in equal monthly payments in advance on the first day of each and every month.

| Year | 13-14 | 14-15 | 15-16 | 16-17 | 17-18 |
|---|---|---|---|---|---|
| Rate | $27.00 | 28.08 | 29.20 | 30.37 | 31.59 |
| Ann. Base | $376,245 | 391,295 | 406,902 | 423,206 | 440,207 |
| Mo. Base | $ 31,354 | 32,608 | 33,909 | 35,267 | 36,684 |

| Year | 18-19 | 19-20 | 20-21 | 21-22 | 22-23 |
|---|---|---|---|---|---|
| Rate | $32.85 | 34.16 | 35.53 | 36.95 | 38.43 |
| Ann. Base | $ 457,765 | 476,020 | 492,602 | 514,898 | 535,522 |
| Mo. Base | $ 38,147 | 39,668 | 41,050 | 42,908 | 44,627 |

Agreed to this 1st day of February, 2013

_____
J B Associates, Landlord
By: Robert F. Denny, Partner

_____
Cook Maran & Associates, Inc.
Marc J. Fishstein, CFO