UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
457 REALTY CORP.,

        Plaintiff,

-against-

CHAMOIS PROPERTIES, INC. and
ROBERT F. DENNY,
       Defendant.
---------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CV-04996 (DRH)(SIL)

**APPEARANCES:**

**For Plaintiff**
Zabell & Collotta, P.C.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
By: Saul D. Zabell, Esq.

**For Defendant:**
Esseks, Hefter, Angel, Di Talia & Pasca, LLP
108 East Main Street
Riverhead, New York 11901
By: Anthony C. Pasca, Esq.
   Kim A. Smith, Esq.

**HURLEY, Senior District Judge:**

  Plaintiff 457 Realty Corp. ("Plaintiff" or "457 Realty") commenced this action against Chamois Properties, Inc. ("Chamois") and Robert F. Denny ("Denny") (together "Defendants"), asserting claims for a breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and fraud. (Compl. at ¶ 41.)

  Presently before the Court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction. In the alternative, defendants seek to

Page **1** of **15**

compel arbitration pursuant to the arbitration clause contained in the Partnership Agreement or to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. For the reasons set forth below, the motion is denied to the extent it seeks dismissal for lack of subject matter jurisdiction but granted to the extent is seeks to compel arbitration.

## BACKGROUND

The following allegations are drawn from the Complaint ("Compl.") and further information garnered from the parties' submissions.

On or about May 1, 1993, Plaintiff, a New York Corporation, and Marco Properties, Inc., at the time a New York Corporation, formed a general business partnership, JB Associates, organized and existing under the laws of the State of New York. (Compl. at ¶¶ 4, 9.) The purpose of the partnership was to purchase and manage a parcel of commercial real estate located at 457-461 Pantigo Road, East Hampton, New York 11937 (the "Pantigo Property"). (Compl. at ¶ 11.) The relationship between Plaintiff and Marco Properties, Inc. was governed by a partnership agreement dated May 1, 1993 ("Partnership Agreement"). (Declaration of Robert F. Denny ("Denny Decl.") at Ex. 1.) At the time of the Partnership Agreement, Denny was the sole shareholder of Marco Properties, Inc. and Joseph Cirillo was the sole shareholder of 457 Realty. (Aff. of Frances Cirillo at ¶ 3; Def. Chamois' Mem. at 1; Denny Decl. at ¶ 5.)

The Partnership Agreement appointed Denny as business manager for JB Associates. (Compl. at ¶¶ 6, 12; Denny Decl. at Ex. 1, ¶ 8.) Denny was "designated as the Business Manager of the [Pantigo Property] to conduct normal business affairs including, but not limited to the operation, maintenance and leasing of the premises." (Compl. at ¶ 12; Denny Decl. at ¶ 17 & Ex. 1, ¶ 8.) Additionally, the Partnership Agreement contained an arbitration clause stating "[i]f there is any dispute with respect to the interpretation of this Agreement or the carrying out of any

of its terms . . . the matter shall be submitted to arbitration in Suffolk County, New York in accordance with the rules of the American Arbitration Association." (Denny Decl. at Ex. 1, ¶ 11.)  The parties agreed the Partnership Agreement was to "be binding on their heirs, executors, administrators, successors and assigns." (*Id.* at Ex. 1, ¶ 12.)

Mr. Cirillo passed away in June 2004 and Mr. Cirillo's wife, Frances, was thereafter and remains today Plaintiff's "principal." (Aff. of Frances Cirillo at ¶¶ 4, 5; Compl. at ¶ 28.)  In 2012, when Denny moved to Florida, Marco Properties, Inc. was forced to change its name to Chamois Properties, Inc. as explained below:

> There came a time in 2012 at which the domicile of Marco Properties was changed from New York to Florida. This required a change of name, since the Marco Properties name was already in use in Florida.  Marco Properties name was changed to Chamois Properties, Inc., and this was approved by the Florida Department of State, and the New York Department of State approved the Dissolution of Marco Properties.  In the process, the Florida Department of State accepted on June 21, 2012, the articles of incorporation for Chamois Properties back to the origin of Marco Properties Inc., March 15, 1993.

(Compl. at ¶ 5, Denny Decl. at Ex. 2.) Pursuant to the Partnership Agreement, Chamois is the successor to all of Marco Properties, Inc.'s rights and obligations under the Partnership Agreement. (Compl. at ¶¶ 9, 17; Denny Decl. at Ex. 1, ¶ 12.)  Denny is the majority shareholder in Chamois. (Denny Decl. at ¶ 1.)  In January 2013, Ms. Cirillo signed, on behalf of 457 Realty, a "Memorandum of Acknowledgement relating to the change of name of Marco Properties, Inc., one of the partners in the JB Associates Partnership" (the "Acknowledgement"). (Denny Decl. at Ex. 2.)  Denny signed on behalf of Chamois. (*Id.*)  The Acknowledgement expressly references the Partnership Agreement and that the Partnership Agreement applies to Plaintiff and Chamois, just as it did to Plaintiff and Marco Properties, Inc. (*Id.*)  Thereafter, due to Denny's move to Virginia in 2017, Chamois became, and remains today, incorporated in Virginia. (Compl. at ¶ 5; Def. Chamois' Mem. at 2-3.)

On or about May 1, 2003, JB Associates entered into a lease agreement with Cook, Hall & Hyde, Inc. for a portion of the Pantigo Property ("Cook Lease"). (Compl. at ¶¶ 20, 21.) Then, on or about January 1, 2005, JB Associates entered into another lease agreement with Bougros, LLC for a separate portion of the Pantigo Property ("Bougros Lease"). (*Id.* at ¶¶ 22, 23.) Both the Cook Lease and Bougros Lease stated, in relevant part:

- That the tenant shall take good care of the premises and shall, at the Tenant's **own** cost and expense make all repairs of a **non-structural** nature;
- Landlord need only repair the damaged **structural** parts of the Premises. Landlord is not required to repair or replace any equipment, fixtures, furnishings or decorations unless originally installed by Landlord;
- Landlord may replace, at the expense of Tenant, any and all broken glass in and about the demised premises;
- The Tenant will pay as additional rent, as billed by the Landlord, the following, all based upon the tenant's percentage occupancy of the entire building which is as follows:
  - Tenant's proportionate share of outside sprinkler system maintenance and repair;
  - Tenant's proportionate share of inside sprinkler system maintenance and repair;
  - Tenant's proportionate share of parking lot maintenance and repair;
- Landlord shall be responsible for all exterior ground maintenance and repair snow removal, the mowing of grass and plantings in general. However, tenant shall pay its proportionate share of the cost thereof. The Tenant shall be responsible for all **non-structural interior maintenance and repair**; and
- Tenant agrees to accept possession of the demised premises "as is" and "as built."

(*Id.* at ¶¶ 21, 23) (emphasis in the original). Plaintiff alleges various acts of malfeasance on the part of Chamois, through Denny and the people hired by Denny. (*Id.* at ¶¶ 32, 33.) It is alleged that Chamois, via Denny, authorized the maintenance and repair of several "non-structural" parts of the Pantigo Property including, but not limited to: HVAC repair and maintenance; parking lot repair and maintenance; interior renovation, repair and maintenance; painting of exterior walls; replacement and/or repair of tenants' windows; landscaping; and plumbing repair. (*Id.* at ¶¶ 24, 25.) Subsequently, in or around December 2009, Denny hired his son-in law, Brian G. Dean, as the new contractor to maintain and make repairs to the Pantigo Property on an as needed basis.

(*Id.* at ¶ 28.)  JB Associates assumed virtually all costs associated with such maintenance and repairs without seeking reimbursement, allegedly in violation of the language in both the Cook Lease and the Bougros Lease. (*Id.* at ¶ 26, 27.)  Chamois allegedly failed to fully disclose to, and by extension withheld, information from Plaintiff regarding maintenance and repair projects performed on the Pantigo Property by Mr. Dean. (*Id.* at ¶ 29.) Denny, allegedly misrepresented that the costs and expenses incurred by JB Associates were legitimate, properly calculated, and fully reimbursed causing an undercut of the total profit distributed to Chamois and Plaintiff, requiring 457 Realty to assume out-of-pocket expenses. (*Id.* at ¶¶ 35, 36.)  The total damages caused by the acts of the Defendants are claimed to exceed $75,000.00. (*Id.* at ¶ 41.). To support the amount of damages, Plaintiff submitted financial statements of the partnership issued to Frances Cirillo by Denny. (Aff. of Frances Cirillo at ¶ 13-17, & Ex. 1.)

## CONTENTIONS OF THE PARTIES

Defendants assert that because the parties have agreed to arbitrate and the claims fall within the scope of the arbitration agreement, this action must be dismissed in its entirety and the Plaintiff must be compelled to arbitrate. (Defs.' Mem. at 8.)  Alternatively, Defendants claim the action must be dismissed either for lack of subject matter jurisdiction as the amount in controversy requirement has not been met, or for failure to state a claim.. (Def.'s Mem. at 4.)

Plaintiff asserts the claims are not subject to arbitration or, at the very least, 457 Realty is entitled to a trial on the issue of whether there is an agreement to arbitrate and the Court, not the arbitrator, should decide the issue of arbitration.  Plaintiff also maintains damages are at least $75,000.00 and the claims are sufficiently pled.

# DISCUSSION

I.  **Applicable Standards of Review**

   A.  **Legal Standard for Rule 12(b)(1). Motion to Dismiss**

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

   B.  **Legal Standard for a Motion to Compel Arbitration**

The Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The purpose of section 2 is to provide "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to

proceed to arbitration on issues as to which an arbitration agreement has been signed." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987).

In determining a motion to compel arbitration, the court applies a standard similar to a motion for summary judgment. *Bensadoun v. Jobe-Riate*, 316 F. 3d 171, 175 (2d Cir. 2003). Thus, "[a] motion to compel arbitration may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012) (internal quotation marks omitted). "A party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Id.* (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)).

Questions of arbitrability are generally reserved for judicial determination, including "whether the parties are bound by a given arbitration clause," or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002)). However, determinations of arbitrability may be referred to an arbitrator "if there is clear and unmistakable evidence that the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Mumin*, 239 F. Supp. 3d at 521 (quoting *Shaw Grp. Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 131 (2d Cir. 2003)). The Second Circuit has held that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an

arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (citing Shaw *Grp.*, 322 F.3d at 122; *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996)).

## II.    Application of Standards to the Present Case

Because jurisdiction is a threshold issue, the Court will address subject matter jurisdiction before addressing the motion to compel arbitration.

### A.    Rule 12(b)(1)

In the present case, there is no issue as to whether the two parties are diverse. Plaintiff is incorporated in New York; Chamois is a foreign business corporation organized, existing, and conducting business in Virginia; and Denny is a domiciliary of Virginia. (Compl. at ¶ 4-6.) The relevant issue is whether Plaintiff satisfied the jurisdictional amount requirement. Before a court can dismiss an action for lack of the jurisdictional amount, it must appear to a "legal certainty" that the claim is less than the jurisdictional amount. *Hall v. EarthLink Network, Inc.*, 2005 WL 147139, at n.5 (2d Cir. Jan. 25, 2005) (*quoting St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). The Second Circuit recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).

Additionally, the Second Circuit has held that "[w]here the pleadings themselves are inconclusive as to the amount in controversy . . . federal courts may look outside those pleadings to other evidence in the record." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994). In *All City Glass & Mirror Corp. v. US Emergency Glass Serv., Inc.*, this court held plaintiff's submission of invoices reflecting the amount it was due for services performed pursuant to the contract was

sufficient to meet the jurisdictional requirement. *All City Glass & Mirror Corp. v. US Emergency Glass Serv., Inc.*, 1992 WL 384185 at *2 (E.D.N.Y. Dec. 17, 1992).  In the present case, Plaintiff alleges that the various items of work improperly paid for exceed $75,000.00. (Compl. at ¶¶ 25, 41.)  To further support its damage claims, Plaintiff has submitted financial documents indicating the total damages to be approximately $78,500.00. (Aff. of Frances Cirillo at ¶ 18-19 & Ex. 1.) Defendants have not submitted any evidence that shows to a legal certainty that the damages alleged cannot meet the jurisdictional amount.

Thus, Plaintiff meets the liberal pleading standard for the amount in controversy and the Defendants' argument on this ground fails.

     **B.**     **Motion to Compel Arbitration**

In the Second Circuit, a two-part test is used to determine whether claims are subject to arbitration: (1) whether the parties have entered into a valid agreement to arbitrate; and (2) if so, whether the dispute at issue falls within the scope of the parties' agreement to arbitrate. *See In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").

        1.     *Agreement to Arbitrate*

"Whether parties have obligated themselves to arbitrate certain issues . . . is determined by state law." *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003). New York follows the common law rule that, "in interpreting a contract, the intent of the parties governs," therefore, "[a] contract should be construed so as to give full meaning and effect to all

of its provisions." *Am. Express Bank Ltd. v. Uniroyal, Inc.*, 562 N.Y.S.2d 613, 614 (N.Y. App. Div. 1990).

In the present case, all evidence indicates a valid arbitration agreement existed between the parties. The Partnership Agreement specifically states "[i]f there is any dispute with respect to the interpretation of this Agreement or the carrying out of any of its terms . . . the matter shall be submitted to arbitration in Suffolk County, New York in accordance with the rules of the American Arbitration Association." (Denny Decl. at Ex 1, ¶ 11.)

Plaintiff asserts Ms. Cirillo did not sign the original Partnership Agreement (that contains the arbitration clause) nor can she validate her husband's signature on the original Partnership Agreement; therefore, there exists a dispute regarding the authenticity of the Partnership Agreement and Plaintiff is not bound by the arbitration clause. (Aff. of Frances at ¶¶ 8, 10-11; Pl.'s Mem. in Opp'n at 8.) This argument is unpersuasive for two reasons. First, that a party unable to authenticate a document does not, in itself, create a genuine issue of fact.[1] Second, Ms. Cirillo, the "principle" of 457 Realty signed the "Memorandum of Acknowledgement relating to the change of name of Marco Properties, Inc., one of the partners in the JB Associates partnership" in which the original Partnership Agreement is referenced; therefore, she should have been aware of the arbitration clause even if she did not sign the original document containing the clause.

    a.    *Authenticity of Signature*

Federal Rule of Evidence 901(a) states, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to

---

[1] Notably, Ms. Cirillo does not allege the signature on the original Partnership Agreement is not her husband's signature, only that she cannot attest to the authenticity of the signature for the Plaintiff on the Partnership Agreement. (Aff. of Frances Cirillo at ¶ 10.)

Page **10** of **15**

support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Additionally, the *"[t]estimony of a witness with knowledge* [indicating] that an item is what it is claimed to be" is sufficient to satisfy Fed. R. Evid. 901(a). Fed. R. Evid. 901(b)(1) (emphasis in original). "The threshold for authentication is 'relatively low.'" *Breeden v. City of New York*, 2014 WL 173249 at * 5 (E.D.N.Y. Jan. 13, 2014) (quoting *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391-92 (S.D.N.Y. 2005)). "The burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (quoting *United States v. Holmquest*, 36 F.3d 154, 168 (1st Cir. 1994), *cert. denied*, 514 U.S. 1084 (1995)). Denny provided an affidavit stating "[a] true and correct copy of the Partnership Agreement governing the relationship between Plaintiff and Marco is attached as Exhibit 1 hereto." (Denny Decl. at ¶ 3 & Ex. 1.) As a witness to the signing of the original agreement, Denny's affidavit, absent any proof from Plaintiff that the signature on the Partnership Agreement is not Mr. Cirillo's, satisfies the standard for authentication. *See New Eng. Surfaces v. E.I. Du Pont de Nemours & Co.*, 517 F. Supp. 2d 466, 473 n.8 (D. Me. 2007), *rev'd* i*n part on other grounds*, 546 F.3d 1 (1st Cir. 2008) (holding the "reasonably likely" threshold was satisfied with an "affidavit provided that each document in question was [a] true and correct copy of document that manufacturer claimed it to be and provided date of each agreement and parties to agreement" ); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 2015 WL 1378882 (S.D.N.Y. Mar. 26, 2015).

      b.    *Acknowledgement of Original Partnership Agreement*

The Second Circuit has explained that "[p]arties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements to which they are not a party." *Ronan Assocs. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs*, 24 F.3d 447, 449 (2d Cir. 1994). In the present case, the Acknowledgment references the partnership itself in the title as well as the "Partnership Agreement dated the 1st day of May, 1993," within the body of the Acknowledgement: "[t]here have been no amendments to the subject agreement"; "[t]he parties to this agreement were Robert F. Denny . . . and Joseph Cirillo"; and "[t]he subject Agreement was formed to govern the operation of the [Pantigo Property]." (Denny Decl. at Ex. 2.) Therefore, even though Ms. Cirillo did not sign the original Partnership Agreement, 457 Realty remained subject to the arbitration clause because she signed the Acknowledgment that references the Partnership Agreement (containing the arbitration clause). *See Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002) (holding "parties were bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference."); *see also Wendrovsky v. Chase Paymentech*, 2012 U.S. Dist. LEXIS 150866 (S.D.N.Y. Oct. 15, 2012) ("Courts routinely enforce arbitration clauses and rules governing arbitration that are clearly incorporated by reference into a contract."). Finally, although "a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms, a party will not be bound to the terms of any document unless it is clearly identified in the agreement." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (internal citations omitted). In the present case, the Partnership Agreement is clearly identified in the Acknowledgment;

therefore, Ms. Cirillo had an obligation to read the Partnership Agreement. 457 Realty is bound by the arbitration clause.

It was clearly the intent of the parties to be bound by the Partnership Agreement and the clauses contained therein. There is a valid arbitration agreement.

   2.   *Scope of the Agreement*

Once a valid arbitration agreement has been established, the remaining issue is the scope of the arbitration clause. Due to the contractual nature of an arbitration clause, "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Id.* at 224 (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 223 (2d. Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, (1983). As discussed below, it is not appropriate for this Court to determine the scope of the agreement.

"[T]he issue of arbitrability may . . . be referred to the arbitrator if 'there is "<u>clear and unmistakable</u>" <u>evidence</u> from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.'" *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (emphasis in original) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d at 1198-99) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In *Contec Corp. v. Remote Solution Co.*, the court held an explicit incorporation into an arbitration clause of rules that empower an arbitrator to decide issues of arbitrability serves as clear and unmistakable evidence of the parties' intent to delegate such

issues to an arbitrator. *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 211 (2d Cir. 2005). The agreement in *Contec* stated "the controversy shall be determined by arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association." *Id.* at 208. In the present case, the Partnership Agreement states any disputes "shall be submitted to arbitration in Suffolk County, New York in accordance with the rules of the American Arbitration Association." (Denny Decl. at Ex. 1, ¶ 11.) Rule 7 of the American Arbitration Association states "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R-7(a). The Second Circuit has held that incorporation of AAA Rule R-7(a) into the contract by reference is a clear manifestation of parties' intent to submit all questions of arbitrability and jurisdiction to the arbitrator. *Contec*, 398 F.3d at 208-09, 211. Here, as in *Contec*, Rule 7 was incorporated into the contract, and therefore is clear and unmistakable evidence that the parties intended the question of arbitrability to be determined by the arbitrator.

Thus, this case should be dismissed and the matter of arbitrability of the present dispute determined by the arbitrator.[2]

## CONCLUSION

For the foregoing reasons, that portion of Defendants' motion seeking dismissal for lack of subject matter jurisdiction is denied and that portion which seeks to compel arbitration is

---

[2] Given that a valid arbitration agreement is in existence, there is no reason to address that portion of the motion addressed to the sufficiency of the pleadings under Rule 9(b).

Page **14** of **15**

granted. Because the parties did not request a stay pending arbitration, the case is dismissed.[3]

The Clerk of Court is directed to enter judgment accordingly and to close this case.

    **SO ORDERED.**

Dated: Central Islip, New York             s/ Denis R. Hurley
       June 19, 2019                       Denis R. Hurley
                                                  United States District Judge

---

[3] *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (holding a stay is only required when "claims are referred to arbitration and a stay [is] requested.").